IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHRISTOPHER T. METZ,

        Plaintiff,

   v.

THE SHELL OIL COMPANY, a
Foreign Corporation, and
EQUISTAFF, LLC,

        Defendants.

Case No. 04 C 4673

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

This is a disability discrimination and accommodation case arising from Plaintiff Christopher Metz's (hereinafter, "Metz") employment at a Shell gas station in St. Charles, Illinois. Defendants Shell Oil Company and Equistaff LLC (hereinafter, collectively, "Shell") move for summary judgment. For the reasons stated herein, Shell's Motion for Summary Judgment **is denied**.

### I. BACKGROUND

The following facts are taken from the parties' Local Rule 56.1 submissions. The facts are undisputed, unless specifically stated otherwise. Because this is a summary judgment motion, all reasonable inferences are settled in the non-movant's favor.

Shell hired Metz to work as a sales clerk at a gas station in St. Charles, Illinois in 1993. He worked as a clerk on the night shift from 10:00 p.m. until 6:00 a.m. On December 16, 1996, Shell terminated Metz. In August 1997, Metz was rehired for the same

position.[1] On August 5, 2002, Metz was terminated a second time, the stated reason being that he disregarded instructions relating to his job. Metz contends that he was terminated by his manager, Mahmud Khan ("Khan"), because he suffered from mental and physical disabilities.

Metz is thirty-eight years old and lives in a condominium owned by his parents. Although his parents own the condominium, Metz pays 60% of the bills associated with his living. Metz is capable of everyday activities such as bathing, using the bathroom, grocery shopping, and cleaning, but he suffers from learning disabilities which make it difficult for him to learn new tasks. He also suffers from a physical condition that makes it difficult for him to squat and bend. Since he graduated from high school, Metz has held a series of jobs including positions at Kentucky Fried Chicken, Ponderosa, and Pinkerton Security.

When Metz was hired by Shell, he wrote on his job application, "I am a learning disabled person with average intelligence. It is difficult for me to organize my thoughts and actions. I am able to learn most jobs, provided the training is structured to allow time to learn and the trainer is patient." Pl. Ex. C. During his tenure at the Shell station, Metz received high performance evaluations in 2000 and 2001. Pl. Ex. C. According to the personnel files produced by Shell, during the time Metz was employed, only one employee ever scored higher than Metz's highest score.

---

[1] Metz's rehire date is disputed by the parties. Because this is a summary judgment motion, all reasonable inferences are settled in Metz's favor.

Metz's father, Carl Metz, met with each of his managers at Shell to explain Metz's learning and physical disabilities. As a result of these meetings, Shell managers made accommodations for Metz. The accommodations included letting him clean twice as many top shelves instead of cleaning the bottom shelves so that he would not have to bend over, being patient with Metz in explaining his responsibilities, and repeating instructions numerous times. Managers agreed to contact Metz's father if problems arose.

In May 2002, Diane Dunne ("Dunne") became the sales consultant for the St. Charles Shell station. Although Dunne had supervisory authority over the managers, assistant managers, and sales clerks, she did not manage the sales clerks. During the summer of 2002, Dunne visited the St. Charles station approximately eight times. Each time she visited, the store was dirty and the merchandise was not placed correctly on the shelves. In June 2002, Kahn became the manager of the St. Charles Shell station. Following his arrival, Kahn discussed the condition of the store with Dunne, as well as problems with specific employees.

After Kahn began working at the St. Charles Shell station, he allegedly made a series of derogatory statements directed at Metz, including, "I do not like you. You do not belong here," and that Metz should not be working 40 hours a week making $9.75 an hour, he should be in some factory pushing a broom for 20 hours. Kahn also allegedly told Metz that he did not care about his disabilities and that "disability was not acceptable." Carl Metz met with Kahn to inform him of his son's disabilities and his need for repetition,

patience, and specific instructions. Kahn responded that he was not interested in Metz's disability. The meeting took place in late June or early July 2002.

Consistent with Shell policy, Kahn provided Metz with a shift duty sheet, which set forth the specific duties to be completed during shifts. The shift duty sheets provided a checklist of items that the employee was to do during his shift. Although Shell has standard shift duty sheets, Kahn created his own. The duties listed on the sheets included, counting cigarettes, keeping the office clean, making fresh coffee, cleaning the fountain drain area, sweeping and mopping the floor, taking the garbage out, cleaning the hot dog machine, and stocking the cooler. Employees were required to initial next to each task they completed during their shift.

Shell contends that Metz consistently failed to complete the tasks and that Kahn spoke to Metz about the deficiencies. Metz also failed to report properly a "drive-off," when someone fills his gasoline tank and does not pay, on at least one occasion. He sometimes checked items on the shift duty sheets instead of writing his initials. Kahn issued Metz several "Corrective Action" forms documenting his failure to complete tasks such as taking the garbage out, cleaning the hot dog machine, and cleaning bathrooms. The first corrective action form is not dated but was issued prior to June 24, 2002. Two additional corrective action forms were issued on June 24, 2002 and July 8, 2002. On July 8, 2002, Metz was suspended and his hours were reduced from forty hours to twenty hours a week. During this time, Kahn had several conversations with Dunne about Metz.

Dunne instructed Kahn to try to coach Metz about his job responsibilities. Kahn made the decision to terminate Metz. He gained approval for the termination from Dunne based on his representations about Metz's shortcomings. On August 5, 2002, Kahn telephoned Metz and informed him that he was terminated due to work performance and insubordination.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court must view all the evidence and any reasonable inferences therefrom in the light most favorable to the nonmoving party. See Miller v. Am. Family Mut. Ins. Co., 203 F.3d 997, 1003 (7th Cir. 2000).

### B. Americans with Disabilities Act

The Americans with Disabilities Act (the "ADA") proscribes discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, . . . and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). Under the ADA, two distinct categories of disability discrimination exist: disparate treatment and failure to accommodate. Hoffman v. Caterpillar, Inc., 256 F.3d 568, 572 (7th Cir. 2001). In order to establish a prima facie case

of discrimination, a plaintiff must show that (1) he is disabled within the meaning of the ADA, (2) he is qualified to perform the essential functions of his job either with or without reasonable accommodation, and (3) he has suffered from an adverse employment decision because of his disability. *Dvorak v. Mostardi Platt Associates*, 289 F.3d 479, 483 (7th Cir. 2002). For the purpose of this motion, Shell concedes that Metz is qualified to perform the essential functions of the job and moves for summary judgment on the first and third elements only.

### 1. Disability under the ADA

Metz can prove that he is disabled under the ADA in one of three ways: (1) he has a physical or mental impairment that substantially limits one or more major life activities; (2) he has a record of such impairment; or (3) he is regarded as having such an impairment. 42 U.S.C. § 12102(2); *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 193 (2002). Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). A person is substantially limited if, compared to the average person in the general population, he cannot perform or is limited in the manner in or extent to which he can perform one of the recognized activities. 29 C.F.R. § 1630.2(j)(ii); *Dvorak*, 289 F.3d at 484.

Shell contends that Metz is not disabled within the meaning of the ADA because his impairments do not substantially limit a major life activity. It asserts that because Metz lives on his own and has held a series of work positions, he fails to show he is substantially

- 6 -

limited in his life activities. It further claims Metz has no record of being disabled and has not submitted any evidence that he was regarded by Shell as disabled.

Whether a person has an ADA disability is fact intensive and made on an individualized case-by-case basis. *Bryne v. Board of Education*, 979 F.2d 560, 565 (7th Cir. 1992); *Merry v. A. Sulka & Co.*, 953 F. Supp. 922, 925 (N.D. Ill. 1997). Summary judgment is inappropriate unless reasonable jurors could conclude only that Metz was not "substantially limited" or was not regarded as disabled. Although Metz lives on his own and has had a series of jobs, this does not preclude a finding that he is disabled. Learning is considered a major life activity under the ADA and difficulty learning new material may be sufficient to limit a substantial life activity. *See Vollmert v. Wisconsin Dep't. of Transportation*, 197 F.3d 293 (7th Cir. 1999)(reversing summary judgment because issue of fact existed as to whether individual with a learning disability was qualified to perform job tasks); *Merry*, 953 F. Supp. 922 at 926 (denying summary judgment where individual had overcome learning disability to graduate college but presented general limitations as to numerical, reading and writing tasks).

The record shows that Metz requires time, repetition, and consistency to learn new practices. In addition, Metz disclosed his learning disability on his job application. He and his father informed each of his managers, including Kahn, that he had disabilities. A reasonable juror could conclude that Metz's learning disability substantially limited a life activity, learning, or that

Shell was informed that Metz was disabled and regarded him as such. Thus, summary judgment is inappropriate on the issue of whether Metz is disabled under the ADA.

## 2. Disparate Treatment

### a. Direct Evidence

There are two available methods for a plaintiff to prove disparate treatment under the ADA, 42 U.S.C. § 12112(a): by using direct evidence or indirectly using the *McDonnell Douglas* burden-shifting approach. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004). Under the direct method, a plaintiff must prove that the decision to terminate him was motivated by the impermissible purpose of disability. *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1089 (7th Cir. 2000)("to survive a motion for summary judgment, [plaintiff] is required to present sufficient evidence to allow a rational jury to reasonably conclude that but for his age or disability, [defendant] would not have fired him."). This can be proven by direct and circumstantial evidence. *Buie*, 366 F.3d at 503. Direct evidence of discrimination is evidence that can be interpreted as either an explicit or implicit acknowledgment of discriminatory intent by the defendant or its agents. *Hill v. Burrell Communications Group, Inc.*, 67 F.3d 665, 667 (7th Cir. 1995). While remarks by nondecision-makers and stray remarks by decision-makers are insufficient to establish discriminatory intent, statements by decision-makers may suffice if they show the decision-maker "place[d] substantial negative reliance on an illegitimate criterion in reaching his decision." *Sierke v. R.R. Donnelley & Sons Co.*, No 94.

C 7593, 1997 WL 614390, at *4 (N.D. Ill. Sept. 24, 1997)(citation omitted). To satisfy this burden, the statements must be temporally related to the discharge or casually related to the decision-making process. *Greier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir. 1996). Metz offers statements made by Kahn as direct evidence of discriminatory intent. Metz submits his own deposition testimony wherein he describes a series of remarks suggesting Kahn did not like Metz because he was disabled. Metz claims that Kahn stated "I do not like you," "You are strange," "You do not belong here," and "You should be in some factory pushing a broom." Metz claims Kahn made the statements at or around the time he decided to fire Metz.

Shell does not deny that Kahn made such statements. Rather, Shell argues that the ultimate decision-maker, Diane Dunne, did not know Metz was disabled. This argument is without merit. Although Dunne approved Metz's discharge, she relied on Kahn's representations to approve the termination. Kahn made the decision to terminate Metz.

Circumstantial evidence is also admissible to provide a basis for drawing an inference of intentional discrimination. *Troupe v. May Dep't. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Circumstantial evidence may consist of suspicious timing, ambiguous oral or written statements, behavior toward or comments directed at employees in the protected group. *Id.*

Metz also offers circumstantial evidence that Kahn fired him based on an illegitimate criterion. From 1997 till 2002, Metz never received a corrective action form. Instead, he consistently received

positive performance reviews. Metz's problems began when Kahn became his manager. Within weeks of Kahn's transfer to the St. Charles Shell station, Metz received three corrective action forms. Carl Metz met with Kahn days before Metz's hours were reduced, the final step before his termination. Kahn was informed at the meeting that Metz required additional time to adjust to the change in management and procedures. Metz was fired shortly after the meeting.

Kahn's alleged comments about Metz's disability were contemporaneous with his decision to begin termination procedures for Metz. In light of Kahn's comments coupled with the timing of his arrival and Metz's termination, there is an issue of material fact as to whether Metz's termination was linked to a discriminatory motive.

### b. *McDonnell Douglas*

Metz may also prove discrimination under the McDonnell Douglas framework. Under the McDonnell Douglas test, in order to defeat Shell's summary judgment motion, Metz must establish that (1) he is disabled within the meaning of the ADA; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment. *Rooney v. Koch Air, LLC*, 410 F.3d 376, 380-81 (7th Cir. 2001). As stated above, there is a triable issue of fact as to whether Metz is disabled within the meaning of the ADA. Shell does not dispute that Metz suffered an adverse employment action. However, because Metz has not set forth any evidence of similarly situated employees that received more favorable treatment, there is no issue of material fact under the McDonnell Douglas test.

### 3. Reasonable Accommodation

Metz contends that Shell failed reasonably to accommodate his disability. As indicated under § 12112(b) of the ADA, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," is considered discrimination "unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). *See Basith v. Cook County*, 241 F.3d 919, 926-27 (7th Cir. 2001) (citation omitted). The ADA defines reasonable accommodation as "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9). The Seventh Circuit has held that an accommodation means, "[t]he employer must be willing to consider making changes in its ordinary work rules, facilities, terms, and conditions in order to enable a disabled individual to work." *Beck v. University of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996).

Metz must show that Shell should have reasonably accommodated his disability and did not. To state a prima facie case of "failure to accommodate" disability discrimination, Metz must show that: (1) he was or is disabled; (2) Shell was aware of his disability; and (3) he was qualified for his job, meaning he could perform the essential

functions with or without reasonable accommodation. *Foster v. Arthur Andersen*, 168 F.3d 1029, 1032 (7th Cir. 1999); *O'Loughlin v. Dominick's Finer Foods*, No. 99 C 8301, 2001 WL 1753500, at *3 (N.D. Ill. April 19, 2001).

Shell argues that Metz does not have a qualifying disability, therefore, it had no responsibility to accommodate him. As stated above, there is an issue of triable fact as to whether Metz is substantially limited in a major life activity and whether Shell regarded him as disabled.

Next, Shell must have been aware of his disability. Metz disclosed his disabilities on his job application. He and his father informed his managers of his disabilities. In fact, Shell accommodated Metz in the past when it complied with his request to clean only the top shelves and to contact his father in the event of a change in procedure or a problem. The evidence on record with respect to Shell's knowledge of Metz's disability is sufficient to survive summary judgment.

Shell does not dispute that Metz was qualified for the position. It argues, however, that Metz cannot show there was an essential function of his job that required accommodation. Shell claims that the accommodations Metz requested, including: written instructions; permission to check, rather than initial his duty shift; and a graduated stick to inventory stacked items were not essential to the performance of his position. Further, Shell argues that the job requirements did not change when Kahn became his manager. Instead, Shell contends, Metz was required to conform to the requirements that

had been expected of him during his entire tenure as a Shell employee. Thus, the accommodation of additional training was not necessary.

Metz requested additional time and consistent, specific instructions to understand and perform in accordance with Kahn's expectations. Metz argues that Kahn did implement changes and had different expectations than previous managers. Metz contends that he informed Kahn he was learning disabled and needed additional time and training to conform to the changes. Instead of providing additional training, Metz testified that Kahn screamed at him continually when he failed to complete a task properly. Metz and his father testified that with additional time, instruction and support, Metz would have been able to overcome his learning difficulties and perform the required tasks.

While Shell is correct that it does not have to make accommodations for nonessential functions of a job, that is not the case here. Metz requested additional time and training. The training related to procedures that Metz failed to properly complete, the basis for his termination. Shell cannot argue that it terminated Metz for failing to complete tasks that it considered nonessential. Metz's performance met his previous managers' expectations, as evidenced by his consistent, positive work evaluations. Whether the job requirements changed when Kahn became manager so that additional training was necessary presents an issue of fact for the jury. *Vollmert*, 197 F.3d at 301(summary judgment reversed where employer

failed to tailor training to accommodate learning disability). Summary judgment on Metz's failure to accommodate claim is denied.

### III. CONCLUSION

For the reasons stated herein, Shell's Motion for Summary Judgment **is denied**.

**IT IS SO ORDERED.**

                                                  _____
                                                  Harry D. Leinenweber, Judge
                                                  United States District Court

Dated:  April 6, 2006